**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PRO-FOOTBALL, INC.,

    Plaintiff,

      v.

SUZAN SHOWN HARJO, *et al.*,

    Defendants.

Civil Action No. 99-1385  (CKK)

**FILED**

DEC 1 1 2000

NANCY MAYER WHITTINGTON, CLERK
U S  DISTRICT COURT

**MEMORANDUM OPINION**

In 1933, the owner of the Boston Braves football team renamed the team "the Redskins"

in order to avoid confusion with the Boston Braves baseball team that played in the same

stadium.  Later that year the Redskins moved to Washington, D.C., and kept the new name

which, according to Plaintiff Pro-Football, had been selected in order to honor Native Americans.

Regardless of the team's intent, a group of Native Americans, defendants in the present

suit, petitioned the Patent and Trademark Office in 1992 to cancel Pro-Football's trademarks on

the word "redskin."  Upon review of the petition, the Trademark Trial and Appeal Board decided

to cancel the trademarks, and Pro-Football subsequently sought this Court's review.  Before the

Court is the Native Americans' Motion to Dismiss or, in the Alternative, for Judgment on the

Pleadings, which challenges several of the causes of action asserted in Pro-Football's complaint.

## I. BACKGROUND

Competing under the name "Redskins" for more than sixty years, Plaintiff Pro-Football's

Washington, D.C., based football team has grown into "one of the most storied sports franchises

in the United States." Compl. ¶ 1.  In that time, Pro-Football's team has won three Super Bowls

and attracted millions of impassioned fans who root fervently for their Redskins every Sunday in

the fall.  *See id.* ¶ 21.  Apart from its three Lombardi trophies, Pro-Football also owns six

valuable trademarks containing the word "redskin" or derivations of it that are registered with the

Patent and Trademark Office.  *See id.* ¶ 14.  One of the trademarks has been registered for over

thirty years, and three others for more than twenty-five years.  *See id.*

Not everyone shares the Redskins fans' love for their team, its name, and its symbols.  In

September 1992, Suzan Shown Harjo and six other Native Americans (collectively, "Native

Americans") petitioned the Trademark Trial and Appeal Board of the Patent and Trademark

Office ("TTAB") to cancel the six trademarks, arguing that the use of the word "redskin(s)" is

"scandalous," "may . . . disparage" Native Americans, and may cast Native Americans into

"contempt, or disrepute" in violation of section 2(a) of the Lanham Trademark Act of 1946

("Lanham Act" or "Act").  *See id.* ¶ 13 (citing 15 U.S.C. § 1052(a)).[1]  Pro-Football, plaintiff in

the action before this Court and defendant in the earlier TTAB proceedings, raised several

affirmative defenses in the TTAB action.  These included arguments that section 2(a) of the

---

[1]  In pertinent part, section 2(a) provides that:
> No trade-mark . . . shall be refused registration on the principal register on
> account of its nature unless it –
> (a) Consists of or comprises immoral, deceptive, or scandalous matter; or matter
> which may disparage or falsely suggest a connection with persons, living or dead,
> institutions, beliefs, or national symbols, or bring them into contempt or disrepute.

Lanham Act unconstitutionally impinges on First Amendment speech rights, that it also contravenes Fifth Amendment due process rights, and that the Native Americans' challenge to the trademarks was barred by the equitable defense of laches. *See id.* ¶ 15, 17.

In a pretrial order issued in March 1994, the TTAB struck each of those defenses. *See id.* ¶ 16-17; *see also Harjo v. Pro-Football, Inc.*, 30 U.S.P.Q.2d 1828 (1994) (*"Harjo I"*). The TTAB dismissed Pro-Football's constitutional defenses because assessing the constitutionality of a statute is "beyond the Board's authority." *See Harjo I*, 30 U.S.P.Q.2d at 1833. It held that the laches defense was unavailable as well after determining that the Native Americans advocated on behalf of a broad, public interest while Pro-Football's interests were distinctly private. *See id.* at 1831.

On April 2, 1999, five years after issuing its pretrial order, the TTAB issued a cancellation order in which it scheduled the cancellation of the contested trademarks. *See* Compl. ¶ 18. The TTAB based its decision, which followed lengthy discovery and evidentiary presentations, on the conclusion that the trademarks "'may be disparaging of Native Americans to a substantial composite of this group of people,' and 'may bring Native Americans into contempt or disrepute.'" *See id.* (quoting *Harjo v. Pro-Football, Inc.,* 50 U.S.P.Q.2d 1705, 1748 (1999) (*"Harjo II"*)).

On June 1, 1999, Pro-Football filed its complaint with this Court, seeking "*de novo* review, pursuant to 15 U.S.C. § 1071(b), of [the TTAB's] unprecedented administrative decision." Compl. ¶ 1. Without expressly bestowing a right to *de novo* review, section 1071(b)(1) states that a party "dissatisfied with the decision of the [TTAB] . . . may . . . have remedy by a civil action." In that action, "[t]he court may adjudge . . . that a registration

-3-

involved should be canceled, . . . as the facts in the case may appear." 15 U.S.C. § 1071(b)(1).

Section 1071(b)(4) states that the United States District Court for the District of Columbia has

jurisdiction where, as here, the defendants "resid[e] in a plurality of districts not embraced within

the same State . . . ." 15 U.S.C. § 1071(b)(4).

In its complaint, Pro-Football presents five causes of action supporting its request that the

Court overturn the TTAB's cancellation order. It argues first that the trademarks do not

disparage Native Americans and second that they do not bring Native Americans into contempt

or disrepute. *See* Compl. ¶¶ 108-111. In the third cause of action, Pro-Football contends that

section 2(a) of the Lanham Act violates the First Amendment because it is a vague, overbroad,

and content-based restriction on speech. *See id.* ¶¶ 112-116. Fourth, it asserts that section 2(a) is

unduly vague in violation of the Fifth Amendment. *See id.* ¶¶ 117-118. Finally, it argues that

the Native Americans' cancellation petition was barred by the doctrine of laches. *See id.* ¶¶ 119-

120.

The Native Americans filed an answer to the complaint on August 30, 1999, and,

subsequently, a motion seeking dismissal of Pro-Football's constitutional and laches claims or,

alternatively, judgment on the pleadings with regard to those claims. *See* Defs.' Mot. to Dismiss

& Mem. of P. & A. in Supp. [hereinafter "Mot. for J. Mem."]. After receiving thorough briefing

on the motion, the Court held a motions hearing on the record on June 29, 2000, and requested

limited additional briefing. The parties submitted additional pleadings pursuant to that request.

Upon review of the pleadings before it and the applicable law, the Court shall deny the

Native Americans' motion as premature. In reaching this decision, the Court has considered Pro-

Football's complaint; the Native Americans' answer; the Native Americans' motion; Pro-

Football's opposition to the motion; the Native Americans' reply; a supplemental memorandum filed by each party; and the transcript of the motions hearing.

## II. DISCUSSION

The Native Americans bring their motion pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. Technically, a 12(b)(6) motion is untimely if filed after the movant has answered the complaint. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 300-01 (2d ed. 1990). Accordingly, because the Native Americans answered the complaint before filing this motion, the Court shall assess it as a Rule 12(c) request for judgment on the pleadings.

The appropriate standard for reviewing a motion for judgment on the pleadings is "virtually identical" to that applied to a motion to dismiss. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987). Thus, the Court must treat the Native Americans' motion "with the greatest of care" and deny it "if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Id.* As with a motion to dismiss, "the plaintiff enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of the complaint." *Id.*

Because this matter entails the review of a matter already addressed by the TTAB, the Court is also mindful of the degree of deference it must afford to that administrative tribunal's decisions. Where, as here, a party challenges a TTAB decision in federal district court, the court's standard of review is a hybrid of deferential treatment and *de novo* scrutiny. *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 989-90 (D.C. Cir. 1998). "[I]n deference

to the TTAB's expertise" with trademark disputes, "'findings of fact made by the [TTAB] are given great weight and not upset unless new evidence is introduced which carries thorough conviction.'" *Id.* at 990 (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition §21:21, at 21-26 (4th ed. 1997)).[2] Because "the district court is just as able as the TTAB to determine an issue of law," however, review of legal questions is *de novo. Id.*

### A. *Motion for Judgment on the Pleadings on Pro-Football's Constitutional Claims*

Before running headlong into constitutional decisions, the Court must first pass on nonconstitutional issues that may resolve the dispute. "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Jean v. Nelson*, 472 U.S. 846, 854 (1985) (quoting *Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 105 (1944)). This "fundamental rule of judicial restraint," *Three Affiliated Tribes of Berthold Reservation v. Wold Eng'g*, 467 U.S. 138, 157 (1984), requires federal courts to pursue nonconstitutional avenues for decision "[p]rior to reaching any constitutional questions." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). Until the nonconstitutional questions are decided, "review of the constitutional issue is premature." *Edward J. DeBartolo Corp. v. NLRB*, 463 U.S. 147, 158 (1983); *see also Massachusetts v. Westcott*, 431 U.S. 322, 323 (1977) (after the state supreme court ordered dismissal of the complaint on the ground that the pertinent statute violated the

---

[2] In *Dickinson v. Zurko*, 527 U.S. 150 (1999), the Supreme Court held that Federal Circuit review of TTAB findings of fact should proceed under the standards set forth in the Administrative Procedure Act ("APA"). *See* 527 U.S. at 152. The APA instructs a reviewing court to upset agency findings of fact only if they are "arbitrary, capricious, [or] an abuse of discretion," or if they are "unsupported by substantial evidence." *Id.* (quoting APA, 5 U.S.C. § 706).

Privileges and Immunity Clause, the Supreme Court vacated and remanded, suggesting "that there may be a statutory basis to provide respondent the relief he seeks, thereby making it unnecessary to decide the constitutional question presented").

In determining whether the doctrine of avoiding constitutional decision-making applies in a particular case, courts should assess whether the constitutional claims would provide relief beyond that sought through nonconstitutional claims. "If no additional relief would have been warranted, a constitutional decision would [be] unnecessary and therefore inappropriate." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 446 (1988).

In the case before the Court, Pro-Football raises five claims in support of its request for relief from the TTAB decision. Two of the claims are constitutional in nature; three are not. All are ultimately directed at the same form of relief: a reversal of the TTAB decision that scheduled the cancellation of Pro-Football's contested trademarks.

In their motion for judgment on the pleadings, the Native Americans challenge both of Pro-Football's constitutional claims as well as its non-constitutional laches claim. They do not, however, contest Pro-Football's other two nonconstitutional claims in which it seeks declarations that its trademarks do not violate the Lanham Act. *See* Compl. ¶¶ 108-111. In other words, the Native Americans ask the Court to assess (and reject) Pro-Football's constitutional claims before considering Pro-Football's two statutory claims.

The avoidance doctrine forecloses the Court's assessment of Pro-Football's constitutional claims on the Native Americans' motion because non-constitutional claims seeking the same

relief remain unresolved.[3]  The avoidance doctrine is particularly fitting in this circumstance

because of the novel and disputed nature of the constitutional issues presented.  Pro-Football's

Fifth Amendment claim is novel because no court has considered whether the Lanham Act's

prohibition of trademarks that "may disparage" people is so vague as to deny due process.  *Cf. In*

*re McGinley*, 660 F.2d 481, 484 (1981) (considering the Act's ban on "scandalous" trademarks,

but not its treatment of trademarks that "may disparage").  Pro-Football's First Amendment

claim confronts a disputed issue.  On one side, the Federal Circuit has cursorily decided that

denying a trademark does not unduly infringe upon speech because the trademark applicant is

nonetheless entitled to use the trademark.  *See id.* (denial of trademark only prevents the

applicant from enjoying the benefits of registration, such as excluding others from using it).  On

the other side, the Ninth Circuit has held that withholding benefits on the basis of the content of

speech violates the First Amendment even if the speech is not prohibited outright.  *See Bullfrog*

*Films Inc., v. Wick*, 847 F.2d 502, 509-10 (1988).

Because the constitutionality of the challenged portion of the Lanham Act is a novel and

unsettled issue, the Court shall tackle it only if Pro-Football does not prevail on its

nonconstitutional claims.  Accordingly, to the extent that the Native Americans' motion

addresses Pro-Football's constitutional claims, the Court shall deny it without prejudice as

---

[3]  The Court did not request briefing on this issue because the breadth and clear direction
of controlling Supreme Court jurisprudence convinces this Court that argument from the parties
would not have provided additional clarification.  Additionally, the Court notes that the
avoidance doctrine simply pertains to the capacity of the Court to consider the claims *at this
time.*  As such, the doctrine does not intercept the Court's authority to assess the constitutional
issues at a later juncture if necessary.  Because the doctrine relates solely to the Court's capacity
and does not permanently bar consideration of these issues, the Court determined that adversarial
briefing on the doctrine would not assist it in reaching its conclusion.

premature.  This decision is rooted solely in the prudential considerations, described above, that caution federal courts to assess the validity of legislative enactments only as a last resort and with great reluctance.  The decision does not reflect upon the soundness of either party's contentions. By denying the motion as premature, the Court does not reject the substance of the Native Americans' arguments, nor does it endorse the validity of Pro-Football's constitutional claims. Rather, the Court concludes that it is simply too early to reach these issues.  If the Court later determines that Pro-Football's nonconstitutional assertions do not entitle it to relief, the Court will turn its attention to the constitutional matters presently held in abeyance.  In that case, the Court will invite the Native Americans to revive their motion for judgment on the constitutional claims, perhaps recast as a motion for summary judgment.

## B.  *Motion for Judgment on the Pleadings on Pro-Football's Laches Claim*

The Native Americans also request judgment on Pro-Football's laches claim, arguing that the language of the Lanham Act bars such an equitable remedy in these circumstances.  *See* Mot. for J. Mem. at 10.  They contend that the Act only allows laches claims "where applicable" and that the parties' competing interests in this case render resort to the equitable remedy inappropriate.  *See id*. at 10-11 (citing Lanham Act §§ 14(3), 19; 15 U.S.C. §§ 1064, 1069).  In support of their argument, the Native Americans remind the Court that the administrative tribunal viewed the laches question as an issue of first impression and determined that the public interest underlying the Native Americans' position blocked Pro-Football from pursuing its laches claim.  *See id.*; *Harjo I*, 30 U.S.P.Q.2d at 1831.

The applicability of equitable claims in cases brought under section 2(a) of the Lanham Act is a legal question.  In considering the issue during the administrative proceeding, the TTAB

-9-

remarked that it was "a question of first impression," thereby clearly indicating its understanding that the solution required a novel application of law, not simply a finding of fact. *Harjo I*, 30 U.S.P.Q.2d at 1831. In such circumstances, when a federal court assesses a trademark panel's legal conclusions, the court's review is *de novo*. *See Material Supply Int'l*, 146 F.3d at 989-90. Accordingly, in considering this legal question, the Court shall not engage in a traditional, deferential review of agency decision-making as described in *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Rather, the Court shall assess anew the applicability of laches and shall only defer to TTAB findings if they are factual, relevant, and properly before the Court. In doing so, the Court shall consider the requirements of the common law doctrine of laches, the doctrine's availability in Lanham Act suits, and its suitability to this particular case.

"The doctrine of laches bars relief to those who delay the assertion of their claims for an unreasonable time. Laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights." *NAACP v. NAACP Legal Defense & Educational Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985). Typically, a laches defense arises in trademark matters when a party defends against a trademark infringement claim on the theory that the original trademark holder fumbled away its trademark rights through inattention. In such typical circumstances, the common law allows for a laches defense only if the defendant meets "three affirmative requirements: (1) a substantial delay by a plaintiff prior to filing suit; (2) a plaintiff's awareness that the disputed trademark was being infringed; and (3) a reliance interest resulting from the defendant's continued development of good-will during this period of delay." *Id.*

While the common law definition of laches does not cleanly apply in light of the

-10-

procedural posture of this case, it can be easily modified:  Pro-Football's laches claim is only available under the common law if (1) the Native Americans delayed substantially before commencing their challenge to the "redskins" trademarks; (2) the Native Americans were aware of the trademarks during the period of delay; and (3) Pro-Football's ongoing development of goodwill during the period of delay engendered a reliance interest in the preservation of the trademarks.  Taking the allegations of the complaint as true for purposes of this dispositive motion, the Court finds that Pro-Football has satisfied the three common law requirements.  Pro-Football alleges that the challenged trademarks "have been registered for as long as thirty years and known to [the Native Americans] for most, if not all, of that time."  Compl. ¶ 105.  It also claims to have developed "substantial goodwill and value" in its trademarks prior to this challenge by devoting "millions of dollars [to their] use, promotion, registration and protection." *Id.* ¶ 106.  These assertions satisfy the common law requirements.  Therefore, the Court concludes, Pro-Football has adequately stated a laches claim as a matter of common law.

Having determined that Pro-Football's laches claim is proper as a matter of common law, the Court turns to the Lanham Act's treatment of the doctrine.  Section 19 states that "equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied."  15 U.S.C. § 1069.  The Native Americans argue that the phrase "where applicable" indicates that laches is only available in limited situations and that this is not one of them.  In particular, they highlight that section 14 allows parties to file cancellation petitions like theirs "at any time."  *See* Mot. for J. Mem. at 10-11 (construing 15 U.S.C. § 1064).  Therefore, they argue, a doctrine like laches that is based on the passage of time is not "applicable" as required by section 19.  *See* Mot. for J. Mem. at 10-11.  Not surprisingly, Pro-Football disagrees with the

Native Americans' interpretation of the interplay between sections 14 and 19. *See* Pl.'s Mem. of

P. & A. in Opp'n to Defs.' Mot. at 27-30. Pro-Football maintains that section 14 simply relates

to the time at which petitions may be filed and that it has no bearing on the validity of the

petitioners' claims or the availability of possible defenses. *See id.* at 28. Under this view of the

statute, a laches claim is "applicable" under section 19 as long as the common law requirements

are met. *See id.* at 29.

   The Court agrees with Pro-Football that the Lanham Act does not expressly preclude

laches claims raised in opposition to cancellation petitions like that brought by the Native

Americans. Section 14 simply sets forth the administrative steps that a party must take to file a

petition. It notes that petitioners must submit the required fee, that they must usually file

cancellation petitions within five years of a trademark's registration, and that they may file

petitions "at any time" where, as here, the petition is based on section 2(a) of the Act. *See* 15

U.S.C. § 1064. It does not address the availability of defenses pertinent to those petitions.

Section 19, on the other hand, does describe defenses and provides that the "equitable principle[]

of laches . . . , where applicable may be considered and applied." 15 U.S.C. § 1069. Notably,

section 19 does not refer to any other portion of the Act and does not indicate that the

"applicability" of an equitable principle turns on the provisions of another, unnamed section.

The omission of any reference to another portion of the statute is particularly meaningful

because, as section 14 illustrates, the Lanham Act's drafters knew how to include such cross-

references when they wanted to do so. *See* 15 U.S.C. § 1064(c) (stating that petitions brought

pursuant to section 2(a) may be filed "at any time"). Accordingly, the Court concludes that the

Lanham Act does not unequivocally bar laches claims and defenses raised in regard to petitions

-12-

brought under section 2(a).[4]

Nonetheless, as the Native Americans argue, the language of section 19 does indicate that laches is not fitting in all circumstances. *See* 15 U.S.C. § 1069 ("[L]aches . . . , *where applicable may* be considered and applied.") (emphasis added). Therefore, courts must assess the doctrine's suitability in particular cases. Laches is an equitable principle, and thus may be applied only as equity demands. In other words, the availability of the doctrine is not a question that can be resolved by a single, precise rule. On the contrary, its applicability is dependent upon the equities of the factual scenarios within which it is raised. Thus, while it is possible that the competing interests at stake in this litigation may counsel against allowing a laches defense (as the TTAB determined), reaching that conclusion requires a careful assessment of the interests that each party seeks to advance.

At this early stage in the litigation, when the Court's review is strictly limited to the facts as alleged in the complaint, the parties have not had an opportunity to present the Court with any detailed information about the interests that underlie their respective positions. Absent that information, the Court is unwilling to jettison Pro-Football's laches argument. Accordingly, the Native Americans' motion seeking judgment on the laches claim shall be denied. Of course, once the factual record has been presented and, perhaps, further developed, the parties may wish to revisit this issue by way of motions for summary judgment.

---

[4] While the Court reviews the TTAB's legal conclusions *de novo*, it notes that the TTAB has struggled with this issue in the past. *See, e.g., Treadwell's Drifters Inc. v. Marshak*, 18 U.S.P.Q.2d 1318, 1320-21 (TTAB 1990) (allowing a laches defense against a petition brought under section 2(a)); *but see National Serv. Indus., Inc. v. Turtle Wax, Inc.*, 154 U.S.P.Q. 68, 70 (TTAB 1967) (determining that section 14 bars the application of laches to petitions brought under section 2(a)).

-13-

## III. CONCLUSION

For the foregoing reasons, the Court shall deny without prejudice the Native Americans' motion for judgment on the pleadings as to Pro-Football's constitutional claims and its laches claim.  With regard to the constitutional claims, the Court's conclusion is rooted in the avoidance doctrine, which admonishes federal courts to exhaust all nonconstitutional avenues to disposition before turning to any constitutional questions.  The Court's decision to deny the motion without prejudice in regard to the laches claim results from its determination that it cannot properly balance the equities of the case without considering a more complete record.  An Order accompanies this Memorandum Opinion.

December _11_, 2000

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies to:

Carolyn B. Lamm
Francis A. Vasquez, Jr.
White & Case LLP
601 Thirteenth Street, NW
Suite 600 South
Washington, DC 20005-3807

Aldo Noto
Dorsey & Whitney LLP
1001 Pennsylvania Avenue, NW
Suite 300 South
Washington, DC 20004