UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PRO-FOOTBALL, INC.,

    Plaintiff,

        v.

SUZAN SHOWN HARJO, *et al.*,

    Defendants.

Civil Action No. 99-1385 (CKK)

**MEMORANDUM OPINION**
(July 26, 2006)

This case arises from the petitions of seven Native Americans ("the Native American

Defendants" or "Defendants") to cancel the registrations of six trademarks used by the Washington

Redskins, a longtime professional football franchise, and owned by Plaintiff Pro-Football, Inc.

("Pro-Football").  Following a limited remand of this Court's September 30, 2006 Memorandum

Opinion and Order, *see Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96 (D.D.C. 2003), this Court

is to evaluate whether the doctrine of laches bars the claim of Mr. Mateo Romero, the youngest of

the seven Native American Defendants in this case.  *See* 415 F.3d 44, 50 (D.C. Cir. 2005).

Allegedly pursuant to the D.C. Circuit's limited remand in this case, the Native American

Defendants have filed a Motion to Conduct Limited Discovery Related to Laches and Memorandum

in Support Thereof, to which Pro-Football has filed an Opposition.  Upon a searching examination

of the parties' filings, the D.C. Circuit's explicit instructions, the relevant case law, and the entire

record herein, the Court – pursuant to its considered discretion – shall deny the Native American

Defendants' Motion to Conduct Limited Discovery.

**I: BACKGROUND**

Pro-Football, Plaintiff in the current action and Respondent in the trademark action below

before the Trial Trademark and Appeal Board ("TTAB" or the "Board"), holds six trademarks

containing the word, or a derivative of the word, "redskin(s)" that are registered with the Patent and

Trademark Office ("PTO").  In September 1992, seven Native Americans – Suzan Shown Harjo,

Raymond D. Apodaca, Vine Deloria, Jr., Norbert S. Hill, Jr., Mateo Romero, William A. Means,

and Manley A. Begay, Jr. – collectively petitioned the TTAB to cancel the six trademarks, arguing

that the use of the word "redskin(s)" is "scandalous," "may . . . disparage" Native Americans, and

may cast Native Americans into "contempt, or disrepute" in violation of Section 2(a) of the Lanham

Trademark Act of 1946 ("Lanham Act" or "Act").  Compl. ¶ 13 (citing 15 U.S.C. § 1052(a)).  In a

pretrial order issued in March of 1994, the TTAB struck all defenses raised by Pro-Football.  *Harjo*

*v. Pro-Football, Inc.*, 30 U.S.P.Q.2d 1828, 1833, 1994 WL 262249 (Trademark Tr. & App. Bd.

1994).  The TTAB dismissed Pro-Football's constitutional defenses (which included a First

Amendment assertion of speech rights, and a Fifth Amendment assertion of due process rights) based

on a determination that assessing the constitutionality of a statute is "beyond the Board's authority."

*Id*.  The TTAB also held that the laches defense forwarded by Pro-Football was also unavailing,

after determining that the Native American Petitioners advocated on behalf of a broad, public

interest while Pro-Football's interests were distinctly private.  *Id*. at 1831, 1994 WL 262249.

Five years after issuing its pre-trial order, the TTAB issued a cancellation order on April 2,

1999 in which it scheduled the cancellation of the six contested "redskin(s)" trademarks.  *Harjo v.*

*Pro-Football, Inc.*, 50 U.S.P.Q.2d at 1748, 1999 WL 375907.  The TTAB based its decision on the

conclusion that the trademarks "may be disparaging of Native Americans to a substantial composite

of this group of people," and "may bring Native Americans into contempt or disrepute."  *Id*.

Following this decision, Pro-Football filed its Complaint with this Court on June 1, 1999, seeking

"*de novo* review, pursuant to 15 U.S.C. § 1071(b), of [the TTAB's] unprecedented administrative

decision." Compl. ¶ 1.  Following a period in which the Native American Defendants filed a motion

to dismiss certain claims, which was denied by this Court, *see Pro-Football v. Harjo*, 57

U.S.P.Q.2d 1140, 1142-43, 2000 WL 1923326 (D.D.C. 2000), and a protracted period of

discovery around the issue of laches, both parties filed cross-motions for summary judgment before

the Court.  In a ruling dated September 30, 2003, this Court issued an extensive Memorandum

Opinion and Order on the cross-motions, holding that (1) the TTAB's finding of disparagement was

not supported by substantial evidence; and, in the alternative, (2) the Native American Defendants'

original trademark action was properly barred by laches.  *See* 284 F. Supp. 2d 96 (D.D.C. 2003).

Following this ruling, the Native American Defendants promptly appealed to the D.C. Circuit,

seeking relief.

 Upon appeal, the D.C. Circuit focused solely upon the issue of laches, leaving the Court's

first, and primary, holding regarding the "lack of substantial evidence" for another day.  *See* 415

F.3d 44, 47-50 (D.C. Cir. 2005).  In its decision, the D.C. Circuit agreed with this Court that laches

was an available defense for Pro-Football against the Native American Petitioners' trademark

claims.  However, noting that the doctrine of laches "runs only from the time a party has reached his

majority," *see id.* at 48 (citing cases), the Court of Appeals – "[w]hile retaining jurisdiction over the

case" – decided upon a limited remand to this Court such that it could "address both trial and

economic prejudice" with respect to the claim of Mr. Mateo Romero, the youngest of the seven

Native American Defendants, who was born in 1966 (and therefore reached the age of majority in

1984).  *See id.* at 48-50.  According to the D.C. Circuit,

> Here, Romero has brought his own claim, and there should be no reason why the
> laches of others should be imputed to him.  In accordance with the context-specific
> approach required by equity, the district court should have measured both his delay
> and the resulting prejudice to Pro-Football based on the period between his
> attainment of majority [i.e., 1984] and the filing of the 1992 cancellation petition

[before the TTAB].

*Id.* at 49-50.

Following the D.C. Circuit's limited remand, this Court asked the parties to jointly agree

upon a briefing schedule to deal with the remaining Romero-related laches issue.  *See Pro-Football,*

*Inc. v. Harjo*, Civ. No. 99-1385 (CKK) (D.D.C. Aug. 2, 2005); *id.* (D.D.C. Jan. 30, 2006) (minute

orders asking for information and briefing from the parties).  Indeed, the D.C. Circuit itself had

requested that the Court take such a step, noting:

> We encourage the district court to take briefing on whether economic prejudice
> should be measured based on the owner's investment in the marks during the
> relevant years, on whether the owner would have taken a different course of action –
> e.g., abandoned the marks – had the petitioner acted more diligently in seeking
> cancellation, or on some other measure.

415 F.3d at 50.

Rather than brief the laches issue, the Native American Defendants have filed a Motion to

Conduct Limited Discovery Related to Laches and Memorandum in Support Thereof, to which Pro-

Football has filed an Opposition.  Defendants seek Rule 30(b)(6) depositions and documents

"related to 1) whether Pro-Football would have abandoned the marks (i.e., change the team name)

had Mr. Romero brought his petition in 1984; and 2) any trial prejudice suffered by Pro-Football

suffer [sic] between 1984 and 1992."  Defs.' Mot. for Disc. at 3.  Pro-Football opposes the

Defendants' motion, contending that such additional discovery was not contemplated by the D.C.

Circuit in its limited remand, would be entirely duplicative of previous discovery, and would add

nothing new to the record.

## II: DISCUSSION

Upon a thorough consideration of the Native American Defendants' request to conduct

further, limited discovery, three fatal flaws become evident and weigh in favor of denying

4

Defendants' motion.  Accordingly, the Court shall – pursuant to its considered discretion – deny

Defendants' request for additional discovery.  *See Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir.

2002) (whether the circumstances warrant a continuance to permit discovery is a decision that falls

within the discretion of the district court).  The Court shall discuss each specific concern in turn.

     1.    <u>Defendants' Motion is Procedurally Defective</u>

    First, the Native American Defendants' Motion to Conduct Limited Discovery Related to

Laches is procedurally defective.  Simply, Defendants have failed to come forward with any

affidavits or other admissible evidence showing that any specific facts are unavailable to them.  To

the extent that they seek to avoid possible summary judgment on the Romero Delay Period (i.e.,

1984-1992) laches claim, Defendants are required to comply with the "affidavit" requirements of

Federal Rule of Civil Procedure 56(f), which provides:

> Should it appear from the *affidavits* of a party opposing the motion that the party
> cannot for reasons stated present by affidavit facts essential to justify the party's
> opposition, the court may refuse the application for judgment or may order a
> continuance to permit affidavits to be obtained or depositions to be taken or
> discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f) (emphasis added); *see also id.* advisory committee's note (1963) ("And

summary judgment may be inappropriate where the party opposing it shows under subdivision (f)

that he cannot at the time present facts essential to justify his opposition.").  Indeed, numerous courts

have stressed that a party moving for further discovery or to avoid summary judgment must, by

affidavit, show a detailed nexus between the information requested and the development of facts

essential to justify the party's opposition.  *See Cloverleaf Standardbred Owners Ass'n, Inc. v.*

*Nat'l Bank of Wash.*, 699 F.2d 1274, 1278 n.6 (D.C. Cir. 1983); *see also Hotel & Rest. Employees*

*Union , Local 25 v. Att'y Gen.*, 804 F.2d 1256, 1269 (D.C. Cir. 1986) (noting that this affidavit

requirement helps "prevent fishing expeditions"), *vacated on other grounds*, 808 F.2d 847 (D.C.

Cir. 1987).   As the Second Circuit has stressed, a party seeking additional discovery under Rule 56(f) must inform the court by affidavit "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (citation omitted).

Here, the Native American Defendants have failed to comply with these basic requirements. They have failed to attach or provide any affidavit; moreover, they have failed to specify what efforts were made to obtain the information in question <u>or</u> why such previous efforts were unsuccessful.   Accordingly, Defendants' request for additional discovery – on top of the "protracted period of discovery on the issue of laches" that has already occurred, *see Harjo*, 284 F. Supp. 2d at 101 – is facially deficient and should be denied.

2.   <u>The Limited Remand from the D.C. Circuit Did Not Provide for Further Discovery</u>

Even assuming *arguendo* that it was proper to reach the merits of Defendants' motion for further discovery, it appears relatively clear that further discovery was not completed by the D.C. Circuit in its limited remand to this Court.   Importantly, in the concluding section of its remand, i.e., Section III, the D.C. Circuit noted:   "*While retaining jurisdiction over the case*, we remand the record to the district court for the purpose of evaluating whether laches bars Mateo Romero's claim."   415 F.3d at 50 (emphasis added).   The precise wording of this final section makes it clear that further discovery was not entertained:   expressly retaining appellate jurisdiction, the panel simply requested a legal "evaluation" of the record before the Court of Appeals and this Court. Because the Court of Appeals retained jurisdiction, this Court is limited by the mandate and must not exceed the scope of that remand by re-opening long-closed discovery.   *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ("[A] federal

district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.  The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and it divests the district court of its control over those aspects of the case involved in the appeal.") (citations omitted).

A review of the D.C. Circuit's remand opinion confirms this interpretation – i.e., that the Court of Appeals did not contemplate further discovery at the district court level.  For example, the Court of Appeals apparently believed that they already had sufficient evidence in the record on appeal to make a determination of Romero's laches themselves, but declined to do so for procedural reasons.  As the panel noted, "[f]or several reasons, we prefer not to undertake our own analysis of Romero's laches."  *Harjo*, 415 F.3d at 50.  The panel then listed three reasons, observing that (1) this Court had never "*addressed* th[e] issue" of Romero's laches; (2) the parties had "*briefed* it minimally at best" to the Court of Appeals; and (3) "most significantly, we may owe deference to the district court's *assessment* of laches."  415 F.3d at 50 (emphasis added).  As this language makes evident, the D.C. Circuit anticipated only that the parties will "brief" the issue spotted by the Court of Appeals, and this Court will "address" and "assess" it.  No further discovery is necessary to deal with these issues, and the D.C. Circuit's opinion itself makes no explicit mention that further discovery is in order.

Indeed, the D.C. Circuit's opinion also emphasizes that the district court is "encourage[d]" to "*take briefing on*" which measure of economic prejudice should be used for purposes of the laches doctrine in this trademark cancellation proceeding.  415 F.3d at 50 (emphasis added).  Such wording indicates that the Circuit wants this Court to make a *legal* determination, in the first instance, of which measure of economic prejudice is appropriate in this case.  As this Court has stressed, in assessing laches in a trademark cancellation proceeding where a litigant is faced not with

the loss of the use of the name, but rather the loss of the registration, "[e]conomic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weigh to the evidence of prejudice." *Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Ouest De La France*, 245 F.3d 1359, 1363 (Fed. Cir. 2001) (cited by this Court, *see* 284 F. Supp. 2d at 143, and by the Court of Appeals, *see* 415 F.3d at 48). According, the "new" discovery sought by Defendants on economic prejudice, seeking to know whether Pro-Football would have changed the Redskins' name during the Romero Delay Period, does not advance the ball at this point in the proceeding – the question whether the name would have been changed is irrelevant; rather, the question is how much investment there has been in the commercial exploitation of the mark.

     3.    <u>Extensive Discovery Has Already Occurred on This Issue, and the Discovery Sought By Defendants Will Add Nothing New to the Record</u>

In addition to the fact that Defendants' motion is procedurally deficient and goes beyond the scope of the D.C. Circuit's limited remand, it is also clear that extensive discovery has already occurred on the issue of laches during the Romero Delay Period, and that the discovery sought by Defendants will add nothing new to the record. As noted, Defendants seek Rule 30(b)(6) depositions and documents "related to 1) whether Pro-Football would have abandoned the marks (i.e., change the team name) had Mr. Romero brought his petition in 1984; and 2) any trial prejudice suffered by Pro-Football suffer [sic] between 1984 and 1992." Defs.' Mot. for Disc. at 3. In order to understand the lack of foundation for such a request at this point, it is important to review what discovery has actually occurred thus far in this action.

     a.    *Prior Discovery*

Following this Court's December 11, 2000 denial without prejudice of Defendants' motion

seeking to dismiss, *inter alia*, Pro-Football's laches claim, *see* 57 U.S.P.Q.2d at 1145-46, 2000 WL

1923326, discovery commenced in this case – including discovery on the issue of whether

Defendants (Mr. Romero among them) were guilty of laches.  In their first set of document requests,

served on March 6, 2001, Defendants requested, in part:

> Document Request No. 2
>
> All documents that constitute or refer or relate to communications with any person
> that in any way refer or relate to . . . *changing the name of the Washington Team*[.]

4/10/06 Decl. of Robert L. Raskopf in Opp'n to Defs.' Mot. for Disc., Ex. A (Defs.' Interrogs. &

Doc. Reqs. (Set 1)) at 7 (emphasis added).  Pursuant to this request, Pro-Football produced over 800

pages of documents on April 5, 2001, followed by a supplemental set of documents on May 3, 2002.

*Id.*, Ex. B (Pr-Football's Fourth Revised Resps. & Objections to Defs.' First Set of Doc. Reqs.) at 4.

Of the approximately 836 pages of documents produced by Pro-Football in response to this request,

approximately 223 relate to the Romero Delay Period.  *See* Pl.'s Opp'n at 3.  In total, Defendants

served 33 document requests covering all aspects of the value of the trademarks at issue, including

the potential prejudice to Pro-Football in the event of cancellation of the trademarks.  *Id.*

Defendants also noticed and took the deposition of the Redskins' current principal owner, Dan

Synder.  *Id.*

Following the close of discovery in April 2003, the parties cross-moved for summary

judgment.  In support of these cross-motions, Defendants filed 181 exhibits, 51 of which concerned

the Romero Delay Period, while Pro-Football filed 327 exhibits, 59 of which concerned the Romero

Delay Period.  *Id.*  Following the Court's September 30, 2003 decision, which ruled in favor of Pro-

Football, Defendants shifted counsel, replacing their previous attorney with new counsel from the

firm of Drinker Biddle & Reath LLP.  While Defendants' current counsel was not present during the

above-described discovery process, such an absence hardly weighs in favor of forcing Pro-Football

to incur the time and expense of repeated discovery.  Rather, the record is clear that substantial

discovery on the issue of laches in general – and the Romero Delay Period in particular – has

already occurred, and Pro-Football should not be compelled to repeat such a performance; rather,

Defendants' present counsel should obtain all materials from their former counsel.

        b.      *The Requested Information is Either Redundant or Will Fail to Shed New*
             *Light on the Relevant Analysis*

      In addition to the fact that significant discovery occurred around these issues during the

protracted discovery period in this case, a review of the specifics of Defendants' discovery request

reveals that the information sought is either redundant or will plainly fail to shed new light on the

forthcoming laches decision relating to Mr. Romero.  In order to illustrate this point, the Court will

review each of Defendants' current requests.

      <u>Media Quotations</u>: As the first subject matter for their proposed Rule 30(b)(6) Notice of

Deposition, Defendants list a series of quotations from various news media sources, and propose to

ask a Pro-Football representative whether "the quotation is accurate" and whether Pro-Football or

anyone else attempted to "have the relevant publication correct, modify or retract the quotation."

Defs.' Mot. for Disc., Ex. 1 (Proposed Rule 30(b)(6) Notice of Deposition Decus Tecum of Pro-

Football) at 2.

      Such a request is plainly deficient.  Given that the late Jack Kent Cooke[1] was the sole,

principal owner of the Washington Redskins franchise during the Romero Delay Period (1984-

1992), only quotations from Mr. Cooke would be relevant.  Because Mr. Cooke is no longer able to

confirm the accuracy of the quotations, Defendants would have to turn elsewhere for such

---

[1] It is undisputed that Mr. Cooke died on April 6, 1997.

confirmation.  However, as a matter of law, no Pro-Football representative would be competent to

make such a confirmation, *see* Fed. R. Evid. 602 ("A witness may not testify to such a matter unless

. . . the witness has personal knowledge of the matter."), and Pro-Football itself could not make such

a representation, given that such matters would no longer be "known or reasonably available to"

Pro-Football as an organization, *see* Fed. R. Civ. P. 30(b)(6).

Moreover, in their first proposed document request, Defendants further seek "documents . . .

relating to . . . any attempt by Pro-Football to have the relevant publication . . . modify or retract the

quotations . . . or any consideration of making such an attempt."  Defs.' Mot. for Disc., Ex. 1

(Proposed Rule 30(b)(6) Notice of Deposition Decus Tecum of Pro-Football) at 4.  Such a request is

clearly duplicative of Defendants' initial Document Request No. 2, made on March 6, 2001, in

response to which Pro-Football has already produced documents within its possession, custody, and

control.  *See* Raskopf Decl., Ex. A-B.

<u>Whether Pro-Football Might Have Changed the Redskins' Name</u>: As their second "subject

matter" for the proposed deposition, and in their second and third document requests, Defendants

purport to seek new information and evidence on whether

> Pro-Football would have or might have changed the name of the Washington, D.C.
> football team, abandoned the relevant trademarks, or taken other action to mitigate
> its losses in response to a petition to cancel its trademarks with the TTAB filed
> [within the Romero Delay Period], or in response to a decision by the TTAB or a
> court of such petition.

Defs.' Mot. for Disc., Ex. 1 (Proposed Rule 30(b)(6) Notice of Deposition Decus Tecum of Pro-

Football) at 3-4.

Such a request is ill-considered for three reasons.  First, as discussed *supra* Section II(2),

such a request does not advance the ball at this stage, given that the relevant economic prejudice

analysis focuses on investment and development of the trademark, and the continued commercial

use and economic promotion of the trademark – not whether Pro-Football would have changed the franchise's name during the Romero Delay Period.  Second, such a request already duplicates Document Request No. 2, served over five years ago on Pro-Football.  Third, and finally, any deposition testimony by a Pro-Football representative today concerning Pro-Football's "state of mind" during the Romero Delay Period would be inadmissible for the purposes of summary judgment or trial, *see* Fed. R. Evid. 602 ("lack of personal knowledge"), nor would such information be "reasonably available" beyond any documents already produced, *see* Fed. R. Civ. P. 30(b)(6).  As such, this proposed testimony is both redundant and irrelevant, and cannot assist the Court in the determination directed by the D.C. Circuit in its remand opinion.

<u>Trial Prejudice During the Romero Delay Period</u>: As the third subject matter for their proposed Rule 30(b)(6) deposition, and their fourth document request, Defendants seek evidence "supporting any allegation that material evidence available on December 9, 1984 became unavailable by September 10, 1992."  Defs.' Mot. for Disc., Ex. 1 (Proposed Rule 30(b)(6) Notice of Deposition Decus Tecum of Pro-Football) at 4-5.

Two problems undermine such a request.  First, the request is duplicative, as Pro-Football has already produced evidence of trial prejudice within the Romero Delay Period.  For instance, Pro-Football has shown that the Redskins club is missing financial records from 1988 and 1991-92 (as well as earlier periods), and that NFL Properties is missing sponsorship lists in connection with the trademarks at issue from 1967-1988.  *See* Decl. of David Pauken in Supp. of Pl.'s Mot. for Summ. J. (7/11/2002) ¶ 26.  Moreover, Edward Bennett Williams – the longtime President of the Redskins, from 1965-1980, when the trademarks were originally registered – died on August 13, 1988, during the Romero Delay Period.  *Id.* ¶ 10.  Second, such information – i.e., when lost information was actually lost – could not be based on matters known or reasonably available to Pro-Football today.

Indeed, forcing Pro-Football to specify exactly when the documents went missing, or to provide documents evidencing the loss of the documents themselves, would make it impossible for a party such as Pro-Football to be able to assert a laches defense, even when the defense itself was valid – i.e., it is impossible to assert trial prejudice when the evidence necessary to make the prejudice showing itself was the victim of passing time.  According, like Defendants' other proposed requests, Defendants' request for Romero Delay Period evidence relating to trial prejudice is both duplicative and ill-formed at this time.

### III: CONCLUSION

For the reasons set forth above, the Court – pursuant to its considered discretion – shall deny the Native American Defendants' Motion to Conduct Limited Discovery.  An appropriate Order accompanies this Memorandum Opinion.


Date:   July 26, 2006


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge