**REDACTED VERSION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PRO-FOOTBALL, INC.,

    Plaintiff,

     v.

SUZAN SHOWN HARJO, *et al.*,

    Defendants.

Civil Action No. 99-1385 (CKK)

**MEMORANDUM OPINION**
(June 25, 2008)

This case began in 1992, when seven Native Americans ("Defendants") petitioned the

Trademark Trial and Appeal Board ("TTAB") to cancel the registrations of six trademarks used

by the Washington Redskins, a longtime professional football franchise, and owned by Plaintiff

Pro-Football, Inc. ("Pro-Football").  After the TTAB granted Defendants' petition, Pro-Football

brought this action, seeking to reverse the TTAB's decision.  On September 30, 2003, this Court

issued a Memorandum Opinion and Order granting summary judgment to Pro-Football on

alternative grounds: first, that the TTAB's cancellation decision was not supported by substantial

evidence, and second, that Defendants' suit was barred by laches.  *See generally*, *Pro-Football,*

*Inc. v. Harjo*, 284 F. Supp. 2d 96 (D.D.C. 2003) ("*Harjo* Summ. J. Op.").  Defendants appealed

that decision to the United States Court of Appeals for the District of Columbia Circuit, and on

July 15, 2005, "[w]hile retaining jurisdiction over the case, [the D.C. Circuit] remand[ed] the

record to [this Court] for the purpose of evaluating whether laches bars [Defendant] Mateo

Romero's claim."  *See Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 50 (D.C. Cir. 2005) ("*Harjo*

**REDACTED VERSION**

Appeal").  The D.C. Circuit did not address nor reach this Court's conclusion that the TTAB's

cancellation decision was not supported by substantial evidence, or its finding of laches as to the

other Defendants.

Following remand, the parties briefed renewed cross-motions for summary judgment,

which are currently pending before the Court.  In reviewing those cross-motions, cognizant of the

explicitly narrow nature of the remand in this case, the Court concludes that it lacks jurisdiction

to–and therefore declines to–reconsider any factual and legal rulings contained in its September

30, 2003 Memorandum Opinion that are not specifically implicated by the D.C. Circuit's

remand.  The Court has thoroughly considered the parties' briefs in connection with their

renewed cross-motions for summary judgment as well as the exhibits attached thereto, and

concludes that Defendant Romero's claim is barred by laches.  The Court shall therefore GRANT

Plaintiff Pro-Football's [117] Motion for Summary Judgment and DENY Defendants' [112]

Cross-Motion for Summary Judgment on the issue of the applicability of laches to Defendant

Mateo Romero's claim.  In so doing, the Court again reiterates–as it did in its September 30,

2003 Memorandum Opinion–that this "opinion should not be read as [] making any statement on

the appropriateness of Native American imagery for team names."  *Harjo* Summ. J. Op., 284 F.

Supp. 2d at 144-45**.**

## I: BACKGROUND

*A.     Factual and Procedural History of This Case*

The factual and procedural history of this action is extensively discussed in the Court's

September 30, 2003 Memorandum Opinion, *see generally Harjo* Summ. J. Op., 284 F. Supp. 2d

**REDACTED VERSION**

96, as well as the D.C. Circuit's remand opinion, *Harjo* Appeal, 415 F.3d 44, and this Court's

July 26, 2006 Memorandum Opinion denying Defendants' motion to conduct additional

discovery on remand, *see Pro-Football, Inc. v. Harjo*, Civ. A. No. 99-1385, 2006 WL2092637

(D.D.C. Jul. 26, 2006) ("*Harjo* Discovery Op."). The Court therefore assumes familiarity with

those opinions, and repeats herein only such facts as are necessary to resolve the pending cross-

motions for summary judgment.

 Pro-Football, Plaintiff in the current action and Respondent in the trademark action

before the TTAB, holds six trademarks containing the word, or a derivative of the word,

"redskin(s)" that are registered with the Patent and Trademark Office ("PTO").[1]  In September

1992, seven Native Americans–Suzan Shown Harjo, Raymond D. Apodaca, Vine Deloria, Jr.,

Norbert S. Hill, Jr., Mateo Romero, William A. Means, and Manley A. Begay, Jr.–collectively

petitioned the TTAB to cancel the six trademarks, arguing that the use of the word "redskin(s)" is

"scandalous," "may . . . disparage" Native Americans, and may cast Native Americans into

"contempt, or disrepute" in violation of Section 2(a) of the Lanham Trademark Act of 1946

("Lanham Act"). Compl. ¶ 13 (citing 15 U.S.C. § 1052(a)). In a pretrial order issued in March

of 1994, the TTAB struck all defenses raised by Pro-Football. *Harjo v. Pro-Football, Inc.*, 30

U.S.P.Q.2d 1828, 1833, 1994 WL 262249 (Trademark Tr. & App. Bd. 1994). The TTAB

dismissed Pro-Football's constitutional defenses based on a determination that assessing the

---

[1] The first of these trademarks, "'The Redskins' written in a stylized script-was registered in 1967, three more in 1974, another in 1978, and the sixth-the word 'Redskinettes'-in 1990." *Harjo* Appeal, 415 F.3d at 46. The Redskins started using the "Redskinettes" mark in commerce in connection with its cheerleaders in or about 1962. *Harjo* Summ. J. Op., 284 F. Supp. 2d at 105.

**REDACTED VERSION**

constitutionality of a statute is "beyond the Board's authority." *Id.* The TTAB also held that the

laches defense advanced by Pro-Football was unavailing because Defendants advocated on

behalf of a broad public interest while Pro-Football's interests were distinctly private. *Id.* at

1831, 1994 WL 262249.

On April 2, 1999–five years after issuing its pre-trial order–the TTAB issued a

cancellation order in which it scheduled the cancellation of the six contested "redskin(s)"

trademarks. *Harjo v. Pro-Football, Inc.*, 50 U.S.P.Q.2d at 1748, 1999 WL 375907. The TTAB

concluded that the trademarks "may be disparaging of Native Americans to a substantial

composite of this group of people," and "may bring Native Americans into contempt or

disrepute." *Id.* Thereafter, on June 1, 1999, Pro-Football filed its Complaint in this action,

seeking "*de novo* review, pursuant to 15 U.S.C. § 1071(b), of [the TTAB's] unprecedented

administrative decision." Compl. ¶ 1. Following a period in which Defendants filed a motion to

dismiss certain claims, which was denied by this Court, *see Pro-Football v. Harjo*, 57

U.S.P.Q.2d 1140, 1142-43, 2000 WL 1923326 (D.D.C. 2000), and a protracted period of

discovery around the issue of laches, both parties filed cross-motions for summary judgment

before the Court. As noted above, on September 30, 2003, this Court issued an extensive

Memorandum Opinion and Order granting Pro-Football's motion for summary judgment on

alternative grounds. *See Harjo generally* Summ. J. Op, 284 F. Supp. 2d 96.

As also noted above, Defendants promptly appealed that decision to the D.C. Circuit,

which chose to focus solely upon the issue of laches, leaving the Court's first, and primary,

holding regarding the "lack of substantial evidence" for another day. *See Harjo* Appeal, 415

REDACTED VERSION

F.3d at 47-50.  The D.C. Circuit agreed with this Court that a defense of laches was available to

Pro-Football against Defendants' trademark cancellation claims.  *Id.* at 47-48.  The D.C. Circuit

noted, however, that the doctrine of laches "runs only from the time a party has reached his

majority," *see id.* at 48 (citing cases), and that this Court had assessed laches as to all Defendants

beginning in 1967, the time of the first mark's registration.  *Id.*  Therefore, "[w]hile retaining

jurisdiction over the case," the D.C. Circuit remanded the record to this Court to "address both

trial and economic prejudice" with respect to the claim of Defendant Romero, who was born in

1966 (and therefore reached the age of majority in 1984).  *See id.* at 48-50.  The D.C. Circuit

instructed that "[i]n accordance with the context-specific approach required by equity, the district

court should have measured both [Defendant Romero's] delay and the resulting prejudice to Pro-

Football based on the period between his attainment of majority and the filing of the 1992

cancellation petition [before the TTAB]."  *Id.* at 49-50.[2]  The D.C. Circuit further encouraged this

Court, on remand, "to take briefing on whether economic prejudice should be measured based on

[Pro-Football's] investment in the marks during the relevant years, on whether [Pro-Football]

would have taken a different course of action–e.g., abandoned the marks–had the petitioner acted

more diligently in seeking cancellation, or on some other measure."  *Id.* at 50.

     Rather than brief the laches issue, Defendants filed a Motion to Conduct Limited

Discovery Related to Laches.  The Court issued a Memorandum Opinion and Order denying that

motion, and setting forth some considerations relevant to the laches evaluation on remand.  *See*

---

     [2] The Court shall refer to the period of time between Defendant Romero's majority on December 9, 1984 and Defendants' filing of the cancellation petition on September 10, 1992 as the "Romero Delay Period."

REDACTED VERSION

*generally Harjo* Discovery Op., 2006 WL 2082637.  Thereafter, Pro-Football filed its

Memorandum of Points and Authorities in Further Support of its Motion for Summary Judgment

(hereinafter "Pro-Football MSJ"), and Defendants filed their renewed Motion for Summary

Judgment and Opposition to Pro-Football's Motion (hereinafter "Defs.' Cross-MSJ").[3]  Pro-

Football filed its combined Reply in support of its own Motion for Summary Judgment and

---

[3] In their Cross-Motion for Summary Judgment/Opposition, Defendants suggest that the Court find Pro-Football's Motion for Summary Judgment "procedurally defective" because it is not accompanied by a Local Rule 7.1(h) Statement of Material Facts.  *See* Defs.' Cross-MSJ at 2 n.1.  Defendants' suggestion is misplaced because the parties' summary judgment briefing on remand essentially amounts to supplemental briefing on their original cross-motions for summary judgment, necessitated by the D.C. Circuit's instructions on remand, rather than new cross-motions for summary judgment.  The Court therefore does not find procedural defect in Pro-Football's failure to provide a new Local Rule 7.1(h) Statement.  Moreover, it does not appear that a new Local Rule 7.1(h) Statement is necessary to resolve the parties' cross-motions for summary judgment for two reasons.  First, although Pro-Football's renewed Motion for Summary Judgment includes factual assertions regarding Pro-Football's various expenditures during the Romero Delay Period, it explains that the calculations behind those figures are based on the methods described in Pro-Football's original Local Rule 7.1(h) Statement, and attaches a copy of that Statement to its Memorandum.  *See, e.g.*, Pro-Football MSJ at 13 & ns. 9-10.  Second, Defendants do not contest Pro-Football's factual claims regarding its expenditures during the Romero Delay Period, but rather argue that those expenditures are not sufficient, as a matter of law, to demonstrate that Pro-Football suffered economic prejudice as a result of Defendant Romero's delay.  As such, no Local Rule 7.1(h) Statement is required in order to "isolate[] the facts that the parties assert are material, distinguish[] disputed from undisputed facts, and identif[y] the pertinent parts of the record."  *Jackson v. Finnegan, Henderson, Farabow, Garret & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) (quoting *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980)).
    For its part, Pro-Football argues that this Court should not consider the new factual submissions that Defendants proffer in support of their renewed Cross-Motion for Summary Judgment, and specifically argues that the Court should strike certain portions of the Declaration of Philip J. Mause submitted by Defendants.  *See* Pro-Football Reply at 19-21.  Defendants oppose Pro-Football's requests.  *See* Defs.' Reply at 7-8.  The Court declines to address Pro-Football's requests because the Court's resolution of the parties' cross-motions for summary judgment does not require reliance upon the information contained in Defendants' additional factual submissions (including Mr. Mause's Declaration).

**REDACTED VERSION**

Opposition to Defendants' Cross-Motion (hereinafter "Pro-Football Reply"), and Defendants

filed their Reply in support of their Cross-Motion for Summary Judgment.  Accordingly, the

parties' renewed cross-motions for summary judgment are ripe for review.

> B.    *The Parties' Factual Assertions Regarding Defendant Romero's Laches*

As was the case as of the Court's September 30, 2003 Memorandum Opinion, there is no

dispute that Defendant Romero was aware of the Washington Redskins team name and the name

of the cheerleaders prior to reaching the age of majority in December 1984.  *See Harjo* Summ. J.

Op., 284 F. Supp. 2d at 112.  Indeed "Mr. Romero, born in 1966, saw Redskins games on

television as a child as well as the Redskinettes cheerleaders."  *Id.*  "It is also undisputed that

Defendants did not file their petition to cancel the registrations of the trademarks until September

10, 1992."  *Id.*  Finally, "it is also undisputed that . . . Pro-Football and NFL Properties invested

in the trademarks and had increasing revenues during the [Romero Delay Period]."  *Id.*  In

particular, Defendants do not contest Pro-Football's assertions that:

- Its list of merchandise licensees nearly tripled (from just over 100 to more than 300) between September 1985 and the end of the Romero Delay Period.  *See* Pro-Football MSJ at 13 (citing original Rule 7.1(h) Stmt (Ex. A to the 10/20/06 Decl. of Robert L. Raskopf submitted in support of Pro-Football's MSJ) ¶ 76 and Pl.'s App. Ex. 126).

- In total, the Redskins contributed over **REDACTED** to NFL Properties' advertising and promotional expenses during the Romero Delay Period, and the Redskins' annual contribution towards advertising and promotion grew from **REDACTED** to **REDACTED** during the Romero Delay Period.  *See* Pro-Football MSJ at 13.

- During the Romero Delay Period, the Redskins have expended money and other

7

**REDACTED VERSION**

    resources on prosecuting the registrations of the trademarks and enforcing them against third party infringement and dilution. *Id.* (citing 7.1(h) Stmt. ¶ 71). This has included filing and renewing the trademarks, responding to office actions from the PTO, drafting cease and desist letters, conducting litigations, and seizing counterfeit goods. *Id.*

- The Redskins have developed goodwill in the trademarks, which was valued at more than **REDACTED** in the Redskins' financial statement for the period ending March 31, 2001. *Id.* at 12-13 n. 8 (citing 7.1(h) Stmt. ¶ 257). Further, a third party valued the goodwill at **REDACTED** in February 2001. *Id.* (citing 7.1(h) Stmt. ¶ 258). In addition, during the Romero Delay Period, the Redskins received revenue in excess of **REDACTED**, and the annual team revenue increased from **REDACTED** in 1984 to **REDACTED** in 1990. *Id.* at 14 (citing 7.1(h) Stmt. ¶ 81).

## II: LEGAL STANDARDS

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In particular, in ruling on cross-motions for summary judgment, the court may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975); *Long v. Gaines,* 167 F. Supp. 2d 75, 85 (D.D.C. 2001). More generally, under the summary judgment standard, the moving party, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

REDACTED VERSION

any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52, (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III: DISCUSSION

The Court makes a few initial observations before turning to the merits of the parties' pending cross-motions for summary judgment. First, the Court's consideration of those motions is significantly cabined by the very limited nature of the D.C. Circuit's remand in this case. As discussed above, the D.C. Circuit concluded that this Court's September 30, 2003 Memorandum

**REDACTED VERSION**

Opinion measured Defendant Romero's laches using the wrong delay period, and declined to

undertake the analysis of Defendant Romero's laches in the first instance. *Harjo* Appeal, 415

F.3d at 50.   Instead, the D.C. Circuit remanded the record to this Court for an "evaluation" of

Defendant Romero's laches, while retaining jurisdiction over the case. *Id.*  As a result, this Court

concludes that it lacks jurisdiction to revisit its previous factual findings and legal conclusions

that are not directly implicated by its evaluation of Defendant Romero's laches.  Furthermore, the

D.C. Circuit did not consider this Court's conclusion that the TTAB's cancellation decision

lacked substantial evidence or that the other Defendants' claims are barred by laches, and did not

provide any indication that it believed those conclusions to be in error.  Therefore, even if this

Court had jurisdiction to consider issues beyond Defendant Romero's laches, the D.C. Circuit's

remand opinion offers no reason for this Court to revisit its prior findings at this time.

       This Court also declines to revisit issues (beyond the applicability of laches to Defendant

Romero's claim) that were resolved in the Court's September 30, 2003 Memorandum Opinion

granting summary judgment to Pro-Football and its July 26, 2006 Memorandum Opinion

denying Defendants' motion to conduct discovery on remand.  This is appropriate in light of the

law of the case doctrine, which provides that "[w]here issues have been resolved at a prior state

in the litigation, based upon principles of judicial economy, courts generally decline to revisit

[them]." *New York v. Microsoft*, 209 F. Supp. 2d 132, 141 (D.D.C. 2002).  The law of the case

doctrine "bars reconsideration of a court's explicit decisions [in earlier phases of a case] as well

as those issues decided by necessary implication." *Id.* (citing *Crocker v. Piedmont Aviation, Inc.*,

49 F.3d 735, 739 (D.C. Cir. 1995); *LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C. Cir. 1996)

**REDACTED VERSION**

(en banc)).  As such, unless required by the D.C. Circuit's remand, the Court does not revisit herein the issues resolved in its previous opinions.

Finally, the Court also notes at the outset that its finding that Defendants' claims are barred by laches was an alternative holding to its conclusion that the TTAB's cancellation decision was not supported by substantial evidence.  That primary holding was not reached by the D.C. Circuit on appeal, and represents this Court's resolution of the underlying issue of disparagement.  As a result, it would be entirely inappropriate for the Court to–as Defendants suggest–"exercise its discretion to deny the defense" of laches in order to allow "the underlying issue of disparagement" to be resolved in this case.  *See* Defs' Cross-MSJ at 24.  The Court nevertheless reiterates that its primary holding regarding disparagement was not intended to "mak[e] any statement on the appropriateness of Native American imagery for team names." *Harjo* Summ. J. Op., 284 F. Supp. 2d at 144-45

Having addressed all of these initial considerations, the Court turns to the task before it: evaluating Defendant Romero's laches within the context of the parties' renewed cross-motions for summary judgment.

     A.    *The Elements of Laches*

As the D.C. Circuit explained, laches is an equitable doctrine "founded on the notion that equity aids the vigilant and not those who slumber on their rights."  *Harjo* Appeal, 415 F.3d at 47 (quoting *NAACP v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985)). Laches "is designed to promote diligence and prevent enforcement of stale claims." *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838 (D.C. Cir. 1982) (citing *Powell v.*

11

REDACTED VERSION

*Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966)).  Pro-Football has the burden of proving the

defense of laches, *id.*, which "requires proof of (1) lack of diligence by the party against whom

the defense is asserted, and (2) prejudice to the party asserting the defense," *Harjo* Appeal, 415

F.3d at 47 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002)).[4]  In

turn, as the D.C. Circuit noted in remanding the record to this Court, prejudice to the party

asserting laches may arise from either trial prejudice or economic prejudice.  *Harjo* Appeal, 415

F.3d at 50.

    B.     *Defendant Romero's Delay Demonstrates a Lack of Diligence*

    As noted above, Defendant Romero waited almost eight years–seven years, nine months,

to be precise–after reaching the age of majority before petitioning to cancel the six trademarks in

---

[4] The Court's September 30, 2003 Memorandum Opinion specifically noted that the two-prong test articulated by the D.C. Circuit in the *Harjo* Appeal (and by the Federal Circuit in *Bridgestone/Firestone Research, Inc. v. Automobile Club de L'Ouest de la France*, 245 F.3d 1359 (Fed. Cir. 2001)) is fundamentally similar to the three-prong test applied in *NAACP* and in this Court's September 30, 2003 Memorandum Opinion granting summary judgment to Pro-Football.  As the Court explained:

> Essentially, to demonstrate laches Pro-Football must show that Defendants' delay in bringing the cancellation proceeding was unreasonable, and that prejudice to Pro-Football resulted from the delay.  *Bridgestone*, 245 F.3d at 1361; [*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999)].  This test is not materially different from the standard articulated in *NAACP*.  The first two steps of the *NAACP* test, substantial delay and notice, form the unreasonable delay prong of the *Bridgestone* case.  Finally, the third step of the *NAACP* test, development of goodwill during the period of delay, is the prejudice element in the *Bridgestone* case.

*Harjo* Summ. J. Op., 284 F. Supp. 2d at 139.

REDACTED VERSION

question.[5]  That delay is "unusually long by any standard."  *See Peshlakai v. Duncan*, 476 F.

Supp. 2d 1247, 1256 (D.D.C. 1979) (describing seven-year period of delay in bringing action

under the National Environmental Policy Act).  Pro-Football correctly notes that "the Romero

Delay Period is similar to or longer than the delay in other trademark cases in which courts have

applied the laches doctrine."  Pro-Football MSJ at 4 (citing *Eppendorf-Netheler-Hinz GmBH v.*

*Nat'l Scientific Supply Co.*, No. 00-9138L, 2001 WL 798844, at *2, 3 (2d Cir. July 31, 2001)

(eight-year delay); *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 n.5

(8th Cir. 1999) (delay of "over four years"); *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir.

---

[5] Defendants argue in their Cross-Motion for Summary Judgment that "the delay period must be calculated differently for the registration of Pro Football's 'Redskinettes' trademark without consideration of the other marks or the length of time the mark 'Redskinettes' had been in use prior to its registration," because Defendant Romero "had no legal cause of action as to the 'Redskinettes' trademark until it was registered" in 1990.  Defs' Cross-MSJ at 22-24.  The Court already addressed and rejected these arguments in its September 30, 2003 Memorandum Opinion.  *See Harjo* Summ. J. Op., 284 F. Supp. 2d at 140.  In particular, the Court noted that Defendants' claim regarding the "Redskinettes" mark is grounded in their claims regarding the other five marks, which were registered long before 1990, and that the TTAB recognized as much during the cancellation proceeding, concluding that Defendants' "arguments and extensive evidence pertain almost entirely to the 'Redskins' portion of [Pro-Football's] marks."  *Id.* Further, the Court "explained that the context of this case is different from many other trademark cases" because "the Washington Redskins cheerleaders have been using the term 'REDSKINETTES' since 1962 . . . this is not a case where the mark was introduced in 1990; rather it had been use for approximately thirty years at the point the Defendants brought their cancellation proceeding."  *Id.*  Indeed, it is undisputed that Defendant Romero has been aware of the Redskins cheerleaders since he was a child.  Pro-Football MSJ at 4 n.3 (citing 7.1(h) Stmt. ¶ 61).  Thus, even if Defendants are correct that Defendant Romero did not have a legal cause of action as to the "Redskinettes" mark until it was registered in 1990, they offer no reason for concluding that Defendant Romero acted reasonably in waiting two years after that registration to bring the cancellation petition.  Rather, it is undisputed that Defendant Romero was aware of the Redskinettes name–as well as the other five Redskins marks–upon reaching the age of majority in 1984 and therefore could have filed the cancellation petition immediately upon the registration of the Redskinettes mark in 1990, instead of waiting until 1992 to do so.

**REDACTED VERSION**

1990) (eight-year delay); *Landers, Frary & Clark v. Universal Cooler Corp.*, 85 F.2d 46, 49 (2d

Cir. 1936) (eight-year delay) (L. Hand, J.)).  Likewise, outside the trademark infringement

context, courts in this Circuit have found laches when faced with similar periods of delay.  Pro-

Football MSJ at 5 (citing, *inter alia*, *CarrAmerica Realty Corp. v. Kaidanow*, 321 F.3d 165, 171-

72 (D.C. Cir. 2003) (two-year delay in action brought by minority shareholders); *Jeanblanc v.*

*Oliver Carr Co.*, No. 94-7118, 62 F.3d 424, 1995 WL 418667, at *4 (D.C. Cir. June 21, 1995)

(almost eight-year delay in breach of partnership/fiduciary duties action)).

  In addition to finding that the Romero Delay Period is similar to periods that other courts

have found to evidence a lack of diligence, the Court concludes that Defendant Romero's almost

eight-year delay is unreasonable in light of the undisputed facts in this case.  Specifically, as the

Court previously found in its September 30, 2003 Memorandum Opinion, Defendant Romero

does not contest that he has been aware of the Washington Redskins team name and the name of

the cheerleaders since he watched Redskins games on television as a child.  *See Harjo* Summ. J.

Op., 284 F. Supp. 2d at 139.; 7.1(h) Stmt. ¶ 61.  This Court's previous opinion also found "the

fact that [Defendants] had knowledge of the use of the [Redskins] team name [] sufficient to

supply actual knowledge of the trademarks being used in the market place."  *Harjo* Summ. J.

Op., 284 F. Supp. 2d at 141 n.35.  The D.C. Circuit's remand opinion offers no reason to

reconsider that finding, and the Court therefore declines to do so.  Further, although Defendants

attempt to downplay the significance of Defendant Romero's awareness of the Redskins team

name during the delay period, that attempt is unavailing.  Defendants argue that actual notice of

the trademarks in question should not be ascribed to Defendant Romero because "[t]here is no

**REDACTED VERSION**

evidence that Mateo Romero was actually aware of his right to file a petition to cancel the

'Redskins' trademarks" prior to 1992. Defs.' Cross-MSJ at 3. As the Court's previous opinion

specifically stated, however, "ignorance of one's legal rights is not a reasonable excuse in a

laches case." *Harjo* Summ. J. Op., 284 F. Supp. 2d at 141 (citing *Jones v. United States*, 6 Ct.

Cl. 531, 532-33 (Cl. Ct. 1984) ("Where laches is raised, knowledge of the law is imputed to all

plaintiffs. Consequently, professed ignorance of one's legal rights does not justify delay in filing

suit.")). Thus, Defendant Romero's professed lack of "a sophisticated understanding of the law,

including the Lanham Act," Defs.' Cross-MSJ at 3, is irrelevant in evaluating his diligence in

pursuing the cancellation action.

In addition to finding that Defendant Romero had actual notice of the trademarks during

the Romero Delay Period, the Court also finds that Defendant Romero had constructive notice of

the "Redskinettes" mark during the Romero Delay Period, by virtue of its publication and

registration in 1990. As this Court has previously found–and the D.C. Circuit has not

challenged–"[p]ublication of the marks in the *Official Gazette* constitutes constructive notice of

the applications at issue." *Harjo* Summ. J. Op., 284 F. Supp. 2d at 140. This Court has also

previously concluded that it is appropriate to charge Defendants with constructive notice, even

though they are not competing claimants, because they "are sophisticated individuals who are

seeking to strip a corporation of the protections of federal law for its trademarks" and because

their "use of the federal trademark laws would cause the same type of damage as a competitor's

actions would." *Id.* at 141. Again, the D.C. Circuit's opinion provides no reason for

reconsidering this conclusion, and the Court therefore rejects Defendants' attempt to reargue it.

**REDACTED VERSION**

*See* Defs.' Cross-MSJ at 4 n.5.

The Court does, however, limit its finding of Defendant Romero's constructive knowledge to the "Redskinettes" mark–"[i]n accordance with the context-specific approach required by equity" in an evaluation of laches, *Harjo* Appeal, 415 F.3d at 49-50–because Defendant Romero had not yet attained majority when the other five trademarks at issue were published and registered.  *See Harjo* Summ. J. Op., 284 F. Supp. 2d at 105-107 (the first five Redskins trademarks were published and registered in 1967, 1972-1974, 1976, and 1978; the "Redskinettes" mark was published and registered in 1990).  While the Court therefore only charges Defendant Romero with constructive knowledge of the "Redskinettes" mark, it nevertheless notes–as this Court and the TTAB have previously–that Defendants' claim regarding the "Redskinettes" mark is grounded in their claims regarding the other five marks. *Harjo* Summ. J. Op., 284 F. Supp. 2d at 140 (citing TTAB finding that Defendants' "arguments and extensive evidence pertain almost entirely to the 'Redskins' portion of [Pro-Football's] marks.").

In sum, the Court concludes that Defendant Romero's delay was undue, in light of his actual knowledge of all of the trademarks before he reached majority and during the seven year and nine months Romero Delay Period, his constructive knowledge of the Redskinettes mark (as to which his claim is derivative of his claims regarding the other Redskins marks), and the fact that he has no reasonable excuse for his delay in taking action.  *See id.* at 141-42 (quoting *Bridgestone*, 245 F.3d at 1361 ("To prevail on its affirmative defense, Bridgestone was required to establish that there was undue or unreasonable delay . . .")).  The Court therefore finds that

16

**REDACTED VERSION**

Pro-Football has established a lack of diligence on Defendant Romero's part with respect to pursuing his cancellation petition.

C.     *Pro-Football Has Established Prejudice*

With respect to the second prong of the laches analysis, the D.C. Circuit instructed that on remand, this Court "should assess both trial and economic prejudice" to Pro-Football during the Romero Delay Period. *Harjo* Appeal, 415 F.3d at 50. The Court of Appeals did not offer any specific guidance as to the quantum of prejudice that Pro-Football must show, and Pro-Football argues that it "need only show a modicum of prejudice to show laches, in light of Romero's eight-year delay." Pro-Football MSJ at 7-8.[6] While Defendants protest that assertion, *see* Defs.' Cross-MSJ at 11 n.6, Pro-Football is correct that "laches is a question of degree." *Hot Wax*, 191 F.3d at 824. Indeed, as the D.C. Circuit explained in *Gull Airborne* (upon which Defendants rely extensively in their Cross-Motion for Summary Judgment, *see* Defs' Cross-MSJ at 3, 5, 13, 16, 18, 19), "[i]f only a short period of time elapses between accrual of the claim and suit, the magnitude of prejudice required before suit would be barred is great; if the delay is lengthy, a lesser showing of prejudice is required." 694 F.2d at 843 (citations omitted).

1.     *Pro-Football Has Demonstrated Trial Prejudice*

---

[6] Pro-Football also argues that it may be entitled to a "presumption" of prejudice based solely on Defendant Romero's "substantial eight-year delay." Pro-Football MSJ at 7-8 (citing *NAACP*, 753 F.2d at 139). *NAACP*, however, involved a delay of "almost thirteen years without any clear reservation of rights," where the party asserting the laches defense had previously threatened to sue but instead "continued as a client" of the other party and "did not protest" the trademark use at issue in the case. 753 F.2d at 139. As the facts of *NAACP* are easily distinguished from the instant case, *NAACP* does not establish that Pro-Football is entitled to a presumption of prejudice in this case.

**REDACTED VERSION**

The D.C. Circuit specifically instructed that, on remand, "[a]s to trial prejudice, the court should consider the extent to which Romero's post-majority delay resulted in a 'loss of evidence or witnesses supporting [Pro-Football's] position.'" *Harjo* Appeal, 415 F.3d at 50 (quoting *Gull Airborne*, 694 F.2d at 844). Pro-Football asserts that the Romero Delay Period has caused substantial losses of both witnesses and evidence supporting its position.

First, and quite significantly, Pro-Football notes that Edward Bennett Williams, the President of the Redskins from 1965 to 1980 (when five of the six trademarks at issue were originally registered), died during the Romero Delay Period, on August 13, 1988. Pro-Football MSJ at 8. Pro-Football argues that the loss of Mr. Williams' testimony during the cancellation proceeding before the TTAB constitutes significant trial prejudice because his "testimony or recollections could have been particularly important to the Redskins' defense on the issue of alleged disparagement in the relevant time frame." *Id.* at 8-9. Pro-Football specifically notes that Mr. Williams "received a letter from and met with a group of purported representatives of Native Americans concerning the 'Redskins' name in 1972." *Id.* For their part, Defendants contest the significance of Mr. Williams' testimony regarding this meeting, arguing that it is of marginal relevance because the only relevant evidence with respect to the disparagement issue is the opinions of Native Americans. Defs.' MSJ at 7-8; Defs.' Reply at 5-6. The 1972 meeting, however, is only one example of what Mr. Williams might have been able to testify to during the TTAB proceeding if Defendant Romero had brought his cancellation petition upon reaching the age of majority in 1984, i.e., while Mr. Williams was still alive. Mr. Williams may very well have had other interactions with Native Americans that would have provided contemporaneous

18

**REDACTED VERSION**

evidence of their opinions of the Redskins name (as opposed to the reconstructed, after-the-fact

survey evidence proffered by Defendants, discussed below).  Further, Mr. Williams would likely

have been able to shed some light on whether the Redskins might have changed their name

during the Romero Delay Period if the cancellation petition had been brought earlier, an issue

that, as discussed below, Defendants stress.  In short, as Pro-Football convincingly argues

"because Mr. Williams died before the cancellation petition itself, it is impossible for the

Redskins to know what Mr. Williams would have said about the allegedly disparaging nature of

the marks when registered."  Pro-Football Reply at 7.  While the Court does not conclude that the

loss of Mr. Williams' testimony, alone, would establish prejudice to Pro-Football as a result of

Defendant Romero's delay, it is certainly a source of relevant evidence that has become

unavailable due to the passage of time.

 Next, Pro-Football argues that it has suffered trial prejudice as a result of Defendant

Romero's delay because that delay "served to exacerbate the problems inherent in trying to

construct methodologically valid surveys of relevant persons' attitudes concerning the Redskins

Marks in 1967," the central issue underlying Defendants' cancellation petition.  Pro-Football

MSJ at 9.  In response, Defendants argue that Pro-Football cannot establish prejudice by arguing

that Defendants could have obtained additional evidence but for the delay.  Defs.' Reply at 6.

Pro-Football is undoubtably correct, however, that "by adding eight additional years to the other

defendants' long delay, Romero further increased the time elapsed between the initial

registrations and the date on which a survey of attitudes at the time of registration took place."

Pro-Football Reply at 10.  If Defendant Romero had filed his cancellation petition when he

**REDACTED VERSION**

reached majority in 1984, he would have been able to collect evidence of attitudes prevailing in

the mid-1960s that was twelve years less removed, and likely more reliable, than the evidence he

and his co-Defendants eventually captured with their 1996 survey.  As this Court recognized in

its September 30, 2003 Memorandum Opinion, "defending this lawsuit against evidence that, due

to the twenty-five year delay, does not directly address the legal question at issue, would

represent a hardship to Pro-Football."  *Harjo* Summ. J. Op., 284 F. Supp. 2d at 143 n.37.

Similarly, while the Court does not find that the impact upon the available survey evidence,

alone, would establish prejudice to Pro-Football, Pro-Football is correct that defending this

lawsuit against evidence that, due to Defendant Romero's delay may be significantly less

accurate, would represent a hardship to Pro-Football.

  Finally, Pro-Football notes that the "undisputed record reflects that the Redskins Club is

missing financial records from 1988 and 1991-1992 (as well as from periods before the Romero

Delay Period), and that NFL Properties is missing sponsorship lists in connection with the

Redskins Marks from 1967 to 1988."  Pro-Football MSJ at 8 (citing 7.1(h) Stmt ¶ 63,65).

Defendants do not dispute these claims, but rather argue that Pro-Football has not demonstrated

that "these documents would be probative other than to argue economic prejudice" and further

argue (without supporting case law) that Pro-Football cannot "prove trial prejudice by showing

an inability to carry its burden of proving economic prejudice."  Defs' Cross-MSJ at 5-7.  To the

contrary, although of less weight than the other claims of prejudice, the Court finds that Pro-

Football may establish trial prejudice by demonstrating the loss of evidence relevant to its laches

defense.  If Defendants were to succeed in their effort to preclude summary judgment in favor of

**REDACTED VERSION**

Pro-Football based on its laches defense, this case would proceed to a trial, where evidence regarding Pro-Football's economic prejudice during the Romero Delay Period would be critical to its ability to establish a laches defense.  Indeed, as the Court previously recognized in its July 26, 2006 Memorandum Opinion regarding Defendants' motion to take discovery on remand, "it is impossible to assert trial prejudice when the evidence necessary to make the prejudice showing itself was the victim of passing time."  *Harjo* Discovery Op., 2006 WL 2092637, at *7.[7]

In sum, the Court finds that Pro-Football has established three forms of trial prejudice: foremost, the loss of Mr. Williams' testimony and the diminished quality of the survey evidence available, and of lesser importance, the lost financial records.  Although none of these, standing alone, would necessarily convince the Court that it would be inequitable to allow Defendant Romero to enforce his claim notwithstanding his delay, when Pro-Football's trial prejudice is considered in conjunction with its economic prejudice, the Court is so convinced.  The Court now continues to address that economic prejudice.

2.     *Pro-Football Has Established Economic Prejudice*

In remanding the record to this Court to evaluate Defendant Romero's laches, the D.C.

---

[7] Defendants also argue that Pro-Football should not be allowed to point to the missing financial records as evidence of trial prejudice because "a plaintiff cannot use its own lack of diligence as an offensive weapon in a laches argument."  Defs.' Cross-MSJ at 6 (citing *Rozen v. District of Columbia*, 702 F.2d 1202, 1204 (D.C. Cir. 1983)).  As Pro-Football correctly points out, however, in *Rozen*, the District of Columbia admitted that it might have the records at issue but could not locate them, and that it might have destroyed the records after the filing of the plaintiff's discrimination claim.  *See id.*  In contrast, the Redskins have stated under oath that the financial records in question in this case are missing, and there is no evidence that they were destroyed after the cancellation petition was filed.  Pro-Football Reply at 9; 7.1(h) Stmt. ¶¶ 62-63.

**REDACTED VERSION**

Circuit "express[ed] no view as to how [economic] prejudice should be measured where, as here, what is at stake is not the trademark owner's right to use the marks but rather the owner's right to Lanham Act protections that turn on registration." *Harjo* Appeal, 415 F.3d at 50.  Instead, the D.C. Circuit "encourage[d] [this] court to take briefing on whether economic prejudice should be measured based on the owner's investment in the marks during the relevant years, on whether the owner would have taken a different course of action–e.g., abandoned the marks–had the petitioner acted more diligently in seeking cancellation, or on some other measure." *Id.*

Thereafter, in its July 26, 2006 Memorandum Opinion regarding Defendants' request to take discovery on remand, the Court reiterated its previous conclusion that:

> in assessing laches in a trademark cancellation proceeding where a litigant is faced not with the loss of the use of the name, but rather the loss of the registration, "[e]conomic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weigh[t] to the evidence of prejudice."

*Harjo* Discovery Op., 2006 WL 2092637, at *4 (quoting *Bridgestone*, 245 F.3d at 1363 (as cited by this Court, *see* 284 F. Supp. 2d at 142, and by the Court of Appeals, *see* 415 F.3d at 48)).  The Court therefore concluded that Defendants' request to take discovery on "whether Pro-Football would have changed the Redskins' name during the Romero Delay Period, does not advance the ball at this point in the proceeding–the question whether the name would have been changed is irrelevant; rather, the question is how much investment there has been in the commercial exploitation of the mark." *Id.*

Notwithstanding this conclusion, Defendants continue to suggest that Pro-Football cannot demonstrate economic prejudice (and that they are therefore entitled to summary judgment on

**REDACTED VERSION**

Pro-Football's laches defense) because "Pro-Football has failed to submit any evidence, <u>nor has</u> <u>it even alleged</u>, that it would have changed its name if a cancellation petition had been filed earlier." Defs.' Cross-MSJ at 20 (emphasis in original). The Court has previously rejected this argument, and continues to find that Pro-Football is not required to make such a showing in order to establish economic prejudice. It is true that some courts have considered, in the context of economic prejudice, the fact that "[h]ad [the plaintiff] successfully pressed its claims in a timely manner, [the defendant asserting the laches defense] certainly could have invested its time and money in other areas or simply renamed its products." *See Hot Wax*, 191 F.3d at 824. Defendants do not, however, cite any cases–nor is the Court aware of any–establishing that such a showing is a *requirement* of a laches defense, as opposed to one possible means of demonstrating economic prejudice.

Moreover, *Hot Wax* involved a claim for false advertising and false promotion under the Lanham Act, rather than a trademark cancellation action. In contrast, as this Court previously found, *Bridgestone*, which involved a trademark cancellation petition, concluded that "[e]conomic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weigh[t] to the evidence of prejudice." *Bridgestone*, 245 F.3d at 1363. The Court therefore applies the standard articulated in *Bridgestone* in evaluating Pro-Football's claim of economic prejudice and shall deny Defendants' Cross-Motion for Summary Judgment to the extent that it is based upon an argument that Pro-Football cannot establish laches without showing that the

**REDACTED VERSION**

Redskins would have changed the team's name.[8]

Pro-Football is correct that, as discussed above, "[i]t is undisputed that, during the Romero Delay Period, the Redskins spent millions of dollars in promoting and marketing the Redskins Marks."  Pro-Football MSJ at 9.  Indeed, Defendants do not challenge any of Pro-Football's factual assertions regarding the money it expended during the Romero Delay Period. As such, "the only question for purposes of [the parties' cross-motions for summary judgment] is whether, under the applicable standards, this undisputed showing is sufficient to establish economic prejudice as a matter of law."  *Id.*  In addressing this question, the Court reiterates that it has already concluded–in its September 30, 2003 Memorandum Opinion–that Pro-Football established economic prejudice by showing that it had "invested heavily in the marketing and development of its brand during the period of the [other Defendants' twenty-five year] delay," and that "common sense dictates that Pro-Football [would] suffer some economic hardship" if its trademark registrations were cancelled.  *Harjo* Summ. J. Op., 284 F. Supp. 2d at 143-44.   Again, the D.C. Circuit's remand opinion offers no reason to revisit this conclusion.

Nevertheless, Defendants argue that Pro-Football's undisputed millions of dollars of investments in its trademarks during the Romero Delay Period does not constitute economic prejudice because Pro-Football is required to make a showing of reasonable reliance on Defendant Romero's delay.  Defs.' Cross-MSJ at 13-17.  The Court previously rejected this

---

[8] While the Court concludes that Pro-Football is not required to demonstrate that the Redskins would have changed the team's name in order to establish economic prejudice, if such a showing were required, the Redskins are correct that Mr. Williams' testimony–lost during the Romero Delay Period–could have illuminated that very question.  *See* Pro-Football Reply at 8 n.2.

**REDACTED VERSION**

argument in its September 30, 2003 Memorandum Opinion, based on the Federal Circuit's

observation "that in trademark cases, unlike patent cases, in order to prove laches a defendant

does not need to demonstrate with specific evidence that it relied on the plaintiff's silence."

*Harjo* Summ. J. Op., 284 F. Supp. 2d at 143.  Indeed, in *Bridgestone*, the Federal Circuit stated

that "economic prejudice to the defendant may ensue whether or not the plaintiff overtly lulled

the defendant into believing that the plaintiff would not act, or whether or not the defendant

believed that the plaintiff would have grounds for action."  245 F.3d at 1363.  *See also A.C.*

*Auckerman Co.*, 960 F.2d at 1034 ("[L]aches focuses on the reasonableness of the plaintiff's

delay in suit.  [In contrast,] equitable estoppel focuses on what the defendant has been led to

reasonably believe from the plaintiff's conduct.").  While Defendants note that two earlier D.C.

Circuit opinions, *NAACP* and *Gull Airborne*, suggest that reliance is required to establish laches,

this Court previously accepted *Bridgestone*'s more recent rejection of a reliance requirement in

connection with a trademark cancellation proceeding, and the D.C. Circuit's remand opinion in

this case provides no basis for reconsidering that conclusion.  The Court therefore finds

Defendants' arguments regarding reliance irrelevant to Pro-Football's ability to demonstrate

economic prejudice.[9]

---

[9] In particular, Defendants argue that Pro-Football cannot demonstrate reasonable reliance upon Defendant Romero's silence during the Romero Delay Period because any such reliance is inherently unreasonable "in light of the legal fact that an action to cancel the mark[s] may be brought at any time by a Native American who recently attained the age of majority."  Defs.' Cross-MSJ at 15 (citing *Harjo* Appeal, 415 F.3d at 48-49).  As Pro-Football correctly notes, however, the D.C. Circuit's remand opinion makes clear that laches must be assessed on an individual basis.  *See Harjo* Appeal, 415 F.3d at 50.  As such, "if Mateo Romero is not bound by the [] laches of other individual Native Americans in his allegedly disparaged group, he [] cannot benefit from any purported absence of laches of still other individuals in the group."  Pro-

REDACTED VERSION

Defendants next argue that, even if Pro-Football is not required to show reasonable

reliance on Defendant Romero's inaction or silence, it "nevertheless bears the burden of showing

that the potential economic harm of which it complains is <u>due to Mateo Romero's delay</u> rather

than simply being a harm inherent in cancellation of the registered marks."  Defs.' Cross-MSJ at

18-22 (emphasis in original).  According to Defendants, "economic prejudice hinges on Pro-

Football proving a 'change in [its] economic during the period of delay,' which change <u>would not</u>

<u>have occurred if the delay had not occurred</u>."  *Id.* at 18-19 (quoting *Auckerman*, 960 F.2d at

1033) (emphasis in Defs.' Cross-MSJ).  Specifically, Defendants argue that "Pro-Football has

produced no evidence whatsoever that would prove or even tend to prove that it would have

reduced investment in the marks or taken other action had a cancellation petition been filed

earlier."  *Id.* at 20.

This argument is essentially a restatement of Defendants' reliance argument, rejected

above.  It is true that "[m]ere delay in asserting a trademark-related right does not necessarily

result in changed conditions sufficient to support the defense of laches.  There must also have

been some detriment due to the delay."  *Bridgestone*, 245 F.3d at 1362.  In the context of a

trademark cancellation action, however, that detriment derives from "investment in and

development of the trademark, and the continued commercial use and economic promotion of a

mark over a prolonged period adds weight to the evidence of prejudice."  *Id.* at 1363.  As this

Court explained in its September 30, 2003 Memorandum Opinion, "[i]n other words, prejudice is

equated with investment in the trademark that theoretically could have been diverted elsewhere

---

Football Reply at 14-15.

**REDACTED VERSION**

had the suit been brought sooner." *Harjo* Summ. J. Op. at 143.

It is undisputed that the Redskins substantially expanded their use of and investment in the registered marks during the Romero Delay Period. Moreover, this Court has previously concluded that, even though Pro-Football would not lose its ability to use the Redskins trademarks if Defendants succeeded in their cancellation petition, "past investment in the mark will be jeopardized by uncertainty surrounding the brand name" and "an economic cost exists when a trademark is cancelled that adversely affects prior investment in the brand." *Id.* at 144. "Indeed . . . common sense dictates that Pro-Football will suffer some economic hardship" if its trademarks are cancelled, "[o]therwise there would be no point to this litigation being used as a vehicle to force Pro-Football to change the name of the team." *Id.* Had Defendant Romero commenced his cancellation proceeding when he reached the age of majority in 1984, Pro-Football could have diverted the millions of dollars it spent on promoting, advertising, and protecting its marks during the Romero Delay Period elsewhere, rather than continuing to invest money in marks that might be rendered uncertain by a successful cancellation petition. The Court previously concluded that this showing was sufficient to establish economic prejudice to Pro-Football as a result of the other Defendants' twenty-five year delay. *See Harjo* Summ. J. Op., 284 F. Supp. 2d at 142-44. While Pro-Football's investments in the Redskins trademarks during the eight-year Romero Delay Period are undoubtedly less than its investments over the course of the other Defendants' delay period, the difference in scope does not require a change in legal reasoning. The Court therefore continues to find that the Redskins' expanded use of and investment in the registered marks, coupled with the risk Defendant Romero's cancellation

27

**REDACTED VERSION**

petition poses to the security of those marks, establishes economic prejudice resulting from the Romero Delay Period.

> C.     *Pro-Football Is Entitled to Summary Judgment Based on Defendant Romero's Laches*

In sum, the Court finds that Pro-Football has established, based on the undisputed material facts, that Defendant Romero unreasonably delayed his bringing of a cancellation petition and that his eight-year delay demonstrates a lack of diligence on his part.  The Court further finds that Defendant Romero's delay has resulted in both trial prejudice and economic prejudice to Pro-Football, such that it would be inequitable to allow Defendant Romero to proceed with his cancellation petition.  The Court shall therefore grant Pro-Football's renewed Motion for Summary Judgment as to its laches defense.

## IV: CONCLUSION

For the reasons set forth above, the Court shall GRANT Plaintiff Pro-Football's [117] Motion for Summary Judgment and DENY Defendants' [112] Cross-Motion for Summary Judgment.  In so doing, the Court again reiterates–as it did in its September 30, 2003 Memorandum Opinion–that this "opinion should not be read as [] making any statement on the appropriateness of Native American imagery for team names."  *Harjo* Summ. J. Op., 284 F. Supp. 2d at 144-45.  An appropriate Order accompanies this Memorandum Opinion.


Date:   June 25, 2008


                                    _____/s/_____
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge